1   Mani Sheik (SBN 245487)
2   SHEIK LAW, INC.
    333 West Portal Ave., Suite A
3   San Francisco, CA 94127
    Tel:  (415) 205-8490
4   Fax: (415) 796-0875
    Email: mani@sheiklaw.us
5
    Attorneys for Plaintiff
6   William Charles Long

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  William Charles Long, an individual,          **CASE NO.:**

12                    Plaintiff,                    **COMPLAINT**

13  v.
                                                    1.  Violations of the Fair Labor Standards Act;
14  Bay Area News Group East Bay, LLC, a           2.  Failure to Pay All Earned Wages;
    Delaware limited liability corporation;        3.  Failure to Provide Meal Periods or
15  MediaNews Group, Inc., a Delaware                  Compensation in Lieu Thereof;
    corporation, d/b/a/ Digital First Media;      4.  Failure to Provide Rest Breaks or
16  California Newspapers Limited                      Compensation in Lieu Thereof;
    Partnership, a Delaware limited               5.  Failure to Provide Accurate Itemized Wage
17  partnership; Marin Independent Journal,            Statements;
    entity form unknown; and DOES 1               6.  Failure to Pay Wage on Regularly
18  through 20, inclusive,                             Established Paydays;
                                                    7.  Failure to Pay All Compensation Due and
19                    Defendants.                       Owing at Separation of Employment;
                                                    8.  Age Discrimination;
20                                                  9.  Disability Discrimination;
                                                    10. Failure to Accommodate;
21                                                  11. Failure to Engage in Interactive Process;
                                                    12. Wrongful Termination in Violation of
22                                                      Public Policy;
                                                    13. Failure to Provide Employment and
23                                                      Personnel Files;
                                                    14. Unlawful and Unfair Business Practices in
24                                                      Violation of Business & Professions Code
                                                        § 17200, *et seq.*
25

26                                                  **REQUEST FOR PUNITIVE DAMAGES**

27                                                  **DEMAND FOR JURY TRIAL**

28

---

Complaint

Plaintiff William Charles Long alleges:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over Plaintiff's claims of violation of the Fair Labor Standards Act ("FLSA") pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 216(b) (federal question jurisdiction) and pursuant to 28 U.S.C. section 1332 (diversity jurisdiction), as there is diversity of citizenship among the parties (Plaintiff is a California resident and Defendants are Delaware and Colorado residents) and the matter in controversy exceeds $75,000. This Court has jurisdiction over Plaintiff's California Labor Code, Fair Employment and Housing Act ("FEHA"), and other related, state-law claims pursuant to 28 U.S.C. section 1367.

2.      Venue is proper in this District because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including but not limited to Plaintiff's employment with Defendants.

**THE PARTIES**

3.      Plaintiff William Charles Long ("Long") is and was a resident of Marin County, California, at all times material hereto.

4.      Defendant Bay Area News Group East Bay, LLC ("BANG") is a Delaware limited liability corporation with a principal place of business in Denver, Colorado. BANG conducts business in California and, at all times material hereto, was and is an employer whose employees are engaged throughout Marin County and the State of California. On information and belief, BANG acquired and now owns and operates Defendant Marin Independent Journal ("Marin IJ") at some unknown time in the past.

5.      Defendant MediaNews Group, Inc. ("MediaNews"), doing business as Digital First Media ("DFM"), is a Delaware corporation with a principal place of business in Denver, Colorado. MediaNews / DFM conduct business in California and, at all times material hereto, were and are an employer whose employees are engaged throughout Marin County and the State of California. On information and belief, MediaNews maintains and operates numerous companies in California, including Marin IJ, BANG, and Defendant California Newspapers Limited Partnership ("CNLP").

6.      CNLP is a Delaware limited partnership with a principal place of business in Denver, Colorado. CNLP conducts business in California and, at all times material hereto, was and is an employer whose employees are engaged throughout Marin County and the State of California. On information and belief, CNLP maintains and operates numerous companies in California, including Marin IJ, BANG, the East Bay Times, and the Mercury News.

7.      The exact entity form of Marin IJ is unknown at this time but will become known through discovery. Marin IJ conducts business in California and, at all times material hereto, was and is an employer whose employees are engaged throughout Marin County and the State of California.

8.      Long is are unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but prays for leave to amend and serve such fictitiously named defendants once their names and capacities become known.

9.      Long is informed and believes, and thereon alleges, that DOES 1 through 20 are the partners, agents, owners, shareholders, managers, or employees of the named Defendants and were acting on behalf of the named Defendants at all relevant times. Long is informed and believes, and thereon alleges, that each and all the conduct alleged herein was performed by, or is attributable to, the named Defendants and DOES 1 through 20, each acting as the agent for the other, with legal authority to act on the other's behalf. As such, Defendants BANG, MediaNews, Marin IJ, CNLP, and DOES 1 through 20 are collectively referred to as "Defendants" and the term "Defendants," as used throughout this complaint, also expressly includes DOES 1 through 20. The conduct of any and all Defendants were in accordance with, and represent the official policy of, each and every one of the Defendants.

10.      Long is informed and believes, and thereon alleges, that at all times material hereto, Defendants, and each of them, were the agents of each and all other Defendants, and in doing the things alleged herein, were acting in the course and scope of such agency and with the permission and consent of their co-defendants such that each defendant is responsible in some actionable manner for the occurrences, omissions, and injuries alleged herein. Long is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally,

negligently, or otherwise responsible for the acts, omissions, occurrences, transactions, and damages alleged herein, and is therefore jointly and severally liable for those damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    Long exhausted his administrative remedies by timely filing a complaint with Department of Fair Employment and Housing ("DFEH") on May 18, 2017. Long received a Right to Sue notice the same date. This action is being brought within one year of that notice.

12.    California Labor Code sections 2698 *et seq.*, i.e., the Private Attorneys Generals Act of 2004 ("PAGA"), authorizes aggrieved employees to sue, on their own behalf and on behalf of current or former employees, directly for various civil penalties under the California Labor Code. On May 18, 2017, Long, on behalf of himself and other current or former employees, provided notice to the California Labor and Workforce Development Agency ("LWDA") and to Defendants (the latter by certified mail), pursuant to California Labor Code section 2699.3(a), of the various violations alleged herein and the facts and theories to support the violations.

## FACTUAL ALLEGATIONS

13.    The Relevant Period for this action is the four years immediately preceding the filing of this complaint ("Relevant Period").

14.    At all relevant times herein, including the Relevant Period, Defendants have employed 5 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and are thus "employers" as defined by FEHA, and are otherwise subject to the provisions of FEHA, the Labor Code, and other applicable laws. Similarly, at all relevant times herein, including the Relevant Period, Defendants were Long's "employer" and Long was their "employee" as defined by the FLSA (29 U.S. Code § 203) such that Defendants are subject to the provisions of the FLSA.

15.    At all relevant times herein, including the Relevant Period, Long's employment by Defendants was subject to the provisions of the FLSA, FEHA, the California Labor Code, and California Industrial Welfare Commission Order No. 1-2001 ("IWC Order"), which regulates the newspaper industry and applies to the wages, hours, and working conditions of Long's employment.

16.     Long is 53 years old. He worked tirelessly and faithfully for Defendants for more than thirty-one years before he was "laid off" on November 1, 2016, despite having an exemplary work record and significantly more seniority than other, younger employees in similar positions who Defendants retained.

17.     Long began working for Marin IJ in 1980, while still in high school, making $5.49 per hour. He did such a great job that he was promoted to Assistant Route Manager. His duties then were to help and deliver papers to the youth carriers and to deliver papers himself. He quit to attend college in 1982, but returned to the company immediately after graduation.

18.     In June 1986, Long was re-hired, as an "Assistant District Sales Manager" working in the Circulation department. He then became a full-time employee.

19.     On information and belief, at some time, Marin IJ was acquired by BANG (which, on information and belief, is owned and operated by MediaNews and/or CNLP). Marin IJ continued, however, to use the business name "Marin Independent Journal." Thus, at some time during the Relevant Period, BANG became Long's official employer, though he continued to work for and represent the "Marin Independent Journal," such that all Defendants are or can be deemed to be Long's employer for purposes of this action.

20.     Defendants promoted Long several times during his career. In June 1987, Long was promoted to "District Manager." In August 1990, he was again promoted, to "PM Divisional Supervisor." And in January 2000, Long was promoted to "Home Delivery Manager."

21.     In or around July 2016, however, more than 30 years into his service with Defendants, Long was demoted to "Branch Manager."

22.     Defendants also bestowed numerous awards and accolades on Long throughout his career for his dedication and work ethic. For example, Long was named the "Employee of the Month" several times for his "determination," "stepping up to the plate" when needed, being "a trouper who isn't afraid to take charge, pitch in, and do whatever it takes to get the job done," and going "above and beyond the call of duty." Similarly, Long was given positive, even "quite laudatory" performance reviews throughout his career, and was told he was doing "a heck of a job." And, finally, Long was given a commendation in February 2010 for speaking about and

helping to end unlawful practices by other employees.

23.     In June 2016, Long reached the "milestone anniversary" of working for Defendants for thirty year and was told "you are vital to the [Defendants'] success."

24.     In April 2009, Defendants told Long they would "raise" Long's hourly rate from $29.27 to $29.86. But for nearly seven years, until March 2016, Defendants continued to pay Long the equivalent of $29.27 per hour. Only in March 2016 did Defendants finally fulfill their promise to "raise" Long's hourly rate to $29.86.

25.     Throughout the Relevant Period, and for even longer, Defendants knowingly and intentionally misclassified Long as an "exempt" employee. Defendants also knowingly and intentionally did not pay him for all hours worked, including overtime, or provide uninterrupted, duty-free 30 minute meal period for a work period of more than five hours, a second meal period for a work period of more than ten hours, or a 10-minute rest break for every four hours worked, or premium pay in lieu thereof.

26.     Although Long's job title had the word "manager" in it for the past thirty years (including when he was working as a high school student making $5.49 per hour), during the Relevant Period Long did not meet the Executive Exemption test set out by the IWC Order or the FLSA. Nor did Long meet any other exemption test in the IWC Order or the FLSA during the Relevant Period.

27.     Specifically, given Defendants' over-a-decade-long shift to using independent contractors rather than employees, Long did not at any time during the Relevant Period (or even further back) customarily and regularly direct the work of two or more other *employees*, as required for the Executive Exemption by the IWC Order or the FLSA. Nor did Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long never managed any employees during the Relevant Period (and, thus, had no authority to hire or fire any non-existent employees). Long only managed independent contractors and outside vendors during the Relevant Period (and before).

28.     That Long did not manage any employee during the Relevant Period was known, and even caused, by Defendants. Thus, Defendants knew or should have known that, during the

Relevant Period, Long was not properly classified under the IWC Order. Defendants knowingly and intentionally continued to misclassify him as "exempt" during the Relevant Period so they could cause, suffer, and permit him to work well in excess of eight hours a day and/or forty a week without paying him for all hours worked, including overtime and without providing timely meal periods and rest breaks, or premium pay in lieu thereof. Indeed, Long's supervisor said many times that Defendants could work Long as much as they want and Long could not do anything about it.

29.    Further, during the Relevant Period, Long was not primarily engaged (more than 50 percent of the time) in duties that meet any of the exemptions as defined in the IWC Order and Labor Code. And Long spent less than half his time performing office or non-manual work.

30.    And Defendants knowingly and intentionally caused Long to work seven days a week on numerous occasions, in violation of California's day of rest statutes.

31.    In violation of the law, Defendants routinely and intentionally failed to record properly, and thus do not have, accurate time records for Long that show when he began and ended each work period during the Relevant Period. Defendants thus failed to provide Long with accurate itemized wage statements showing the correct number of hours worked during the Relevant Period at the effective regular and overtime rates of pay applicable to those hours worked.

32.    During the Relevant Period, Long was typically paid a wage without regard to the amount of hours or days he actually worked. Long was made to sign a timecard stating, inaccurately, that he had worked 8 hours each day and only 5 days a week. One of Long's colleagues tried to fill out a timecard with the actual hours he worked, and was told this was unacceptable. By failing to record properly the actual hours or days Long worked and paying him the same amount regardless of the actual hours or days worked, Defendants routinely and intentionally failed to compensate Long for all wages to which he was entitled.

33.    Unlike Defendants, Long maintained detailed, contemporaneous records of all the hours and days he worked during the Relevant Period.

34.    During the Relevant Period (and for many years before), Long routinely worked

for Defendants without being provided an uninterrupted, duty-free 30 minute meal period for a work period of more than five hours, a second meal period for a work period of more than ten hours, or a 10-minute rest break for every four hours worked, or premium pay in lieu thereof. Long was not provided and routinely had to forego meal periods (much less the two meal periods he was owed when he worked more than 10 hours a day) and rest breaks to perform his job duties. Given the schedule Defendants caused, suffered, and permitted Long to work, there was not sufficient time to take a 30-minute uninterrupted meal period or take rest breaks within the periods the law requires.

35.     During the Relevant Period (and for many years before), Long routinely worked 10- or 12-hour days, if not longer. And, during the Relevant Period, Long routinely worked seven days a week in violation of the Labor Code's day of rest statutes. Indeed, during the Relevant Period, Long worked 12 or more hours in a day approximately 375 days—the equivalent of more than a full year (and more than a quarter of the entire Relevant Period). And Long worked 14 or more hours in a day approximately 176 days—the equivalent of nearly six full months.

36.     As just one example, during a six-week period from early-November to mid-December 2015, Long worked all but one day, including Thanksgiving and every day during that holiday, and worked 12 or more hours seven of those days.

37.     Starting in early 2016, Long's workload and hours increased even more, such that 12-hour days, or longer, became the norm. For example, during a six-week period from January 10 to February 29, 2016, Long worked every single day. His average day during that time exceeded 11 hours of work, and included a 16.5 hour day, four 15.5-hour days, and many 15-, 14.5-, and 14-hour days.

38.     Starting in February 2016, Long was reassigned to work in Defendants' Richmond, California, office, to cover not just his own duties but those of other employees Defendants had recently terminated or reassigned but not replaced, or employees who were out on disability (which happened often). Long requested but was never provided a description of his new duties and responsibilities. Following this transfer, Long's workload and hours worked increased even more. His average workday in each month of 2016 exceeded 10 hours. Indeed, in

1   May, June, and July 2016, Long's average workday was 14, 15, and 14 hours per day. Defendants

2   caused, suffered, and permitted Long to work every single day during that three-month period.

3       39.    As Long's workload and hours increased, he sought help from Defendants' Human

4   Resources department. Specifically, Long explained that the long hours and stress were taking a

5   toll on him physically, mentally, and emotionally, and requested an accommodation in the form

6   of reducing his hours and assigning others to help. Defendants did nothing to help or

7   accommodate Long, did not engage in any good faith interactive discussion with him, and did not

8   inform him of his rights to leave, as California or federal law require.

9       40.    In April 2016, Long was involved in a car accident while working for Defendants.

10  Long was contacted by one of Defendants' independent contractors, who wanted to meet Long

11  urgently. Even though it was four hours into an otherwise typically long shift, Long drove to El

12  Cerrito to meet the vendor, but crashed into another car en route. The accident was directly

13  caused by Long's exhaustion due to working so many hours for so many days. Ever the faithful

14  employee, though, Long still finished his own routes and all other daily responsibilities that day.

15      41.    On August 9, 2016, the stress and physical, mental, and emotional exhaustion

16  overwhelmed Long and he had a panic attack. Even in the emergency room, Long was a diligent

17  employee, calling his coworker to explain that he was in the hospital and could not physically

18  make it in to work that day. Afterward, Long informed his supervisors and sent them and HR

19  proof of the incident. Even though the doctor gave Long two days off, he ended up working all

20  three days, the first two days from home and the third day back in the office – for 14.5 hours.

21  Defendants knew of Long's medical issues and did nothing to accommodate them.

22      42.    Defendants, including their management and human resources, were aware of

23  Long's physical and/or mental disability and/or medical condition, and refused to engage in the

24  interactive process or to reasonably accommodate him.

25      43.    On November 1, 2016, Defendants terminated Long's employment under the

26  auspices of a "layoff." Long was told he was being laid off because Defendants lost the contract

27  to deliver the New York Times out of the Oakland distribution center. However, Long worked out

28  of the Richmond distribution center, not Oakland, so the contract loss did not affect his position.

1   Nor was the workload of the Richmond distribution center affected by the loss of the contract.

2   44.   Because the Older Workers Benefits Protections Act required that Defendants

3   provide Long with a list of employees eligible and not eligible for layoff and include the

4   decisional unit, Defendants provided Long with a list of such information. The information

5   provided, however, was deliberately incorrect and meant to confuse, trick, and entice Long into

6   making a less-than-fully informed decision regarding the offered severance.

7   45.   For example, the decisional unit listed is incorrect. Further, the information

8   Defendants provided does not even include Long himself. What's more, the youngest person

9   listed under either eligible *or* non-eligible employees was allegedly 53 years old, even though

10   there are employees younger than 53 in Long's work unit, including Gwen Toschi, a colleague of

11   Long's who Long is informed and believes is younger than he is, and who is in the same position

12   but had only worked for Defendants for less than one year at the time. Toschi, who had thirty

13   years less seniority than Long and who was not listed in the information Defendants provided

14   Long, was not was not laid off. Nor were many other younger coworkers in the same or similar

15   positions who had less tenure than Long.

16   46.   The list Defendants provided Long itself evidences age bias. Of eleven total

17   employees identified, Defendants laid off seven of the eight oldest and retained the three

18   youngest.

19   47.   Long was not paid his full final wages on the date of his termination, or any date

20   thereafter, including unpaid wages, unpaid overtime, and missed meal periods and rest breaks.

21   48.   On November 18, 2016, Long requested, through his counsel and pursuant to

22   Labor Code sections 226, 432, and 1198.5, that Defendants provide copies of all his personnel

23   and employment files, including wage statements, time records, employment contracts, employee

24   handbooks, evaluations, disciplinary actions, and anything at all that Long had signed as part of

25   his employment. Defendants provided Long's personnel file on December 1, 2016, but did not

26   provide Long's payroll records until December 23, 2016.

27   **FIRST CAUSE OF ACTION**

28   (Violations of the Fair Labor Standards Act)

(Against all Defendants)

49.     Long realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

50.     During the Relevant Period, Defendants were Long's "employer" and Long their "employee" as defined by the FLSA.

51.     The FLSA presumes Long was not exempt from its wage, hour, and working conditions rules unless a specific exemption applied.

52.     During the Relevant Period, no FLSA exemption applied to Long's employment such that he was at all times a non-exempt employee. Long did not meet the requirements to be exempt from the FLSA's overtime compensation requirements, including but not limited to the Executive Exemption. Long did not at any time during the Relevant Period customarily and regularly direct the work of two or more other employees, as required by the FLSA. Nor did Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long never managed any employees during the Relevant Period (and, thus, had no authority to hire or fire any non-existent employees). Long only managed independent contractors and outside vendors during the Relevant Period (and before).

53.     During the Relevant Period, Defendants caused, suffered, and permitted Long to work overtime but failed to compensate him for the work.

54.     During the Relevant Period, Defendants knew or should have known of their obligations to pay Long for all hours worked, and to pay Long overtime compensation at one and one-half times his regular rate of pay for all hours worked in excess of the maximum weekly hours established by 29 U.S.C. section 207.

55.     During the Relevant Period, Defendants' failure to compensate Long fully for all hours worked was not in good faith, and was a willful violation of the FLSA.

56.     As a result of the foregoing violations of the FLSA as herein enumerated, Long is entitled to a three-year statute of limitations for back pay of earned but unpaid overtime and an equal amount in liquidated damages.

57.     Long is also entitled to recover reasonable attorneys' fees and costs pursuant to 29

1    U.S.C. section 216(b).

2                          **SECOND CAUSE OF ACTION**

3                         (Failure to Pay All Earned Wages)

4                            (Against all Defendants)

5        58.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

6    forth herein.

7        59.    Defendants were Long's "employer" during the Relevant Period under the

8    California Labor Code and the IWC Order.

9        60.    California law presumes Long was not exempt from the wage, hour, and working

10   conditions rules provided in the Labor Code and the IWC Order unless a specific exemption in

11   the IWC Order applies.

12       61.    During the Relevant Period, no exemption applied to Long's employment such

13   that he was at all times a non-exempt employee. Long did not meet the requirements to be exempt

14   from the IWC Order's overtime compensation requirements, including but not limited to the

15   Executive Exemption. Long did not at any time during the Relevant Period customarily and

16   regularly direct the work of two or more other employees, as required by the IWC Order. Nor did

17   Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long

18   never managed any employees during the Relevant Period (and, thus, had no authority to hire or

19   fire any non-existent employees). Long only managed independent contractors and outside

20   vendors during the Relevant Period (and before).

21       62.    Pursuant to Labor Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and

22   related statutes, and also pursuant to the IWC Order, Defendants were required to pay Long

23   overtime compensation at prescribed hourly overtime rates for all overtime hours actually

24   worked.

25       63.    During the Relevant Period, Defendants routinely and intentionally failed to

26   calculate properly Long's overtime compensation as required by law.

27       64.    During the Relevant Period, Defendants routinely and intentionally failed to record

28   properly accurate time records for Long, showing when he began and ended each work period.

65.     During the Relevant Period, Defendants paid Long the same amount regardless of the actual hours or days worked. Long was made to sign a timecard stating, inaccurately, that he had worked 8 hours each day and only 5 days a week.

66.     By failing to record properly the actual hours or days Long worked, and paying Long the same amount regardless of the actual hours or days he worked, Defendants routinely and intentionally failed to pay Long for the premium pay for all of his overtime hours during the Relevant Period, as required by Labor Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and related statutes, and also pursuant to the IWC Order.

67.     During the Relevant Period, Defendants failed and refused to compensate Long for overtime hours worked in excess of eight (8) hours per day and/or forty (40) hours per week, as required under the aforementioned labor regulations. Specifically, Defendants failed to compensate Long for overtime hours worked in excess of eight (8) hours per day, forty (40) hours per week, and/or for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek at one and one-half (1 ½) times the regular rate of pay, and/or double-time hours for hours worked in excess of twelve (12) hours per day and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive workday.

68.     As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the aforementioned labor regulations, Long has been damaged in that he has not received all wages due and owing, and has suffered and continues to suffer losses related to the use and enjoyment of wages and lost interest on such wages all to his damage in amounts according to proof at trial.

69.     As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the aforementioned labor regulations, Long was damaged by not receiving all wages owed to him and is entitled, pursuant to Labor Code section 1194, to recover the unpaid balance of the full amount of this overtime wage compensation due, including interest thereon, together with reasonable attorneys' fees and costs of suit.

70.     As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the aforementioned labor regulations, Long is entitled, pursuant to Labor Code

1  section 558, to recover civil penalties against Defendants.

2  **THIRD CAUSE OF ACTION**

3  (Failure to Provide Meal Periods or Compensation in Lieu Thereof)

4  (Against all Defendants)

5  71.   Long realleges and incorporates by reference all prior Paragraphs as if fully set

6  forth herein.

7  72.   Defendants were Long's "employer" during the Relevant Period under the

8  California Labor Code and the IWC Order.

9  73.   California law presumes Long was not exempt from the wage, hour, and working

10 conditions rules provided in the Labor Code and the IWC Order unless a specific exemption in

11 the IWC Order applies.

12 74.   During the Relevant Period, no exemption applied to Long's employment such

13 that he was at all times a non-exempt employee. Long did not meet the requirements to be exempt

14 from the IWC Order's overtime compensation requirements, including but not limited to the

15 Executive Exemption. Long did not at any time during the Relevant Period customarily and

16 regularly direct the work of two or more other employees, as required by the IWC Order. Nor did

17 Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long

18 never managed any employees during the Relevant Period (and, thus, had no authority to hire or

19 fire any non-existent employees). Long only managed independent contractors and outside

20 vendors during the Relevant Period (and before).

21 75.   Labor Code section 226.7(b) provides that an employer "shall not require an

22 employee to work during a meal or rest or recovery period mandated pursuant to an applicable

23 statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the

24 Occupational Safety and Health Standards Board, or the Division of Occupational Safety and

25 Health."

26 76.   Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an

27 employee a meal or rest or recovery period in accordance with a state law . . . the employer shall

28 pay the employee one additional hour of pay at the employee's regular rate of compensation for

1  each workday that the meal or rest or recovery period is not provided."

2      77.    Labor Code section 512 provides that an employer "may not employ an employee

3  for a work period of more than five hours per day without providing the employee with a meal

4  period of not less than 30 minutes, except that if the total work period per day of the employee is

5  no more than six hours, the meal period may be waived by mutual consent of both the employer

6  and employee. An employer may not employ an employee for a work period of more than 10

7  hours per day without providing the employee with a second meal period of not less than 30

8  minutes, except that if the total hours worked is no more than 12 hours, the second meal period

9  may be waived by mutual consent of the employer and the employee only if the first meal period

10  was not waived."

11      78.    During the Relevant Period, Long routinely worked for Defendants without being

12  provided an uninterrupted, duty-free 30 minute meal period for a work period of more than five

13  hours or a second meal period for a work period of more than ten hours. Long was not provided

14  and routinely had to forego meal periods (much less the two meal periods he was owed when he

15  worked more than 10 hours a day) to perform his job duties. Given the schedule Defendants

16  caused, suffered, and permitted Long to work, there was not sufficient time to take a 30-minute

17  uninterrupted meal period within the periods the law requires.

18      79.    During the Relevant Period, Defendants never paid Long an hour of premium pay

19  in lieu of a missed meal period in a day.

20      80.    As a direct and proximate result of Defendants' willful conduct, Long has suffered

21  harm and is entitled to an additional hour of premium pay for each shift during which he was not

22  provided with a 30-minute uninterrupted, duty-free meal period, an amount to be ascertained at

23  trial.

24                          **FOURTH  CAUSE OF ACTION**

25                   (Failure to Provide Rest Breaks or Compensation in Lieu Thereof)

26                               (Against all Defendants)

27      81.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

28  forth herein.

82.     Defendants were Long's "employer" during the Relevant Period under the California Labor Code and the IWC Order.

83.     California law presumes Long was not exempt from the wage, hour, and working conditions rules provided in the Labor Code and the IWC Order unless a specific exemption in the IWC Order applies.

84.     During the Relevant Period, no exemption applied to Long's employment such that he was at all times a non-exempt employee. Long did not meet the requirements to be exempt from the IWC Order's overtime compensation requirements, including but not limited to the Executive Exemption. Long did not at any time during the Relevant Period customarily and regularly direct the work of two or more other employees, as required by the IWC Order. Nor did Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long never managed any employees during the Relevant Period (and, thus, had no authority to hire or fire any non-existent employees). Long only managed independent contractors and outside vendors during the Relevant Period (and before).

85.     Labor Code section 226.7(b) provides that an employer "shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

86.     Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

87.     The IWC Order requires that employers authorize and permit non-exempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period, based on the total hours worked daily and at the minimum rate of a net ten consecutive minutes for each four-hour work period, or major fraction thereof.

88.     During the Relevant Period, Long routinely worked for Defendants without being

1  provided a 10-minute rest break for every four hours worked. Long was not provided and

2  routinely had to forego rest breaks to perform his job duties. Given the schedule Defendants

3  caused, suffered, and permitted Long to work, there was not sufficient time to take rest breaks

4  within the periods the law requires.

5        89.    During the Relevant Period, Defendants never paid Long an hour of premium pay

6  in lieu of a missed rest break in a day.

7        90.    As a direct and proximate result of Defendants' willful conduct, Long has suffered

8  harm and is entitled to an additional hour of premium pay for each shift during which he was not

9  provided with a rest break, an amount to be ascertained at trial.

10  **FIFTH CAUSE OF ACTION**

11  (Failure to Provide Accurate Itemized Wage Statements)

12  (Against all Defendants)

13        91.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

14  forth herein.

15        92.    Defendants were Long's "employer" during the Relevant Period under the

16  California Labor Code and the IWC Order.

17        93.    California law presumes Long was not exempt from the wage, hour, and working

18  conditions rules provided in the Labor Code and the IWC Order unless a specific exemption in

19  the IWC Order applies.

20        94.    During the Relevant Period, no exemption applied to Long's employment such that

21  he was at all times a non-exempt employee. Long did not meet the requirements to be exempt

22  from the IWC Order's overtime compensation requirements, including but not limited to the

23  Executive Exemption. Long did not at any time during the Relevant Period customarily and

24  regularly direct the work of two or more other employees, as required by the IWC Order. Nor did

25  Long have the authority to hire or fire other employees during the Relevant Period. In fact, Long

26  never managed any employees during the Relevant Period (and, thus, had no authority to hire or

27  fire any non-existent employees). Long only managed independent contractors and outside

28  vendors during the Relevant Period (and before).

95.     Labor Code section 226 requires an employer to keep accurate, itemized pay statements. Each pay statement must accurately itemize: gross wages earned; the precise, actual number of hours and minutes worked by a non-exempt employee; all deductions; net wages earned; inclusive dates of the pay period; the name of the employee; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period.

96.     During the applicable statutory period, Defendants routinely, knowingly, and intentionally failed to provide Long, at the time of each payment of wages, an accurate itemized statement in writing showing the requirements of Labor Code section 226.

97.     As a direct and proximate result of Defendants' knowing and willful conduct, Long has suffered harm and is entitled to the greater of actual damages as ascertained at trial or $50 for the initial pay period and $100 for each subsequent pay period, not exceeding an aggregate penalty of $4,000.

98.     As a direct and proximate result of Defendants' willful, knowing, and intentional conduct, Long is entitled to recover civil penalties pursuant to Labor Code section 226.3.

## SIXTH CAUSE OF ACTION

(Failure to Pay Wage on Regularly Established Paydays)

(Against all Defendants)

99.     Long realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

100.    Defendants were Long's "employer" during the Relevant Period under the California Labor Code and the IWC Order.

101.    Labor Code section 204 provides in part that all wages "earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

102.    Labor Code section 210 provides for a civil penalty to be assessed against "every person" that fails to pay the wages of each employee as provided in Labor Code section 204.

103.    Long is informed and believes, and on that basis alleges, that Defendants, during the Relevant Period, were "person[s]" under Labor Code section 210 for purposes of the Labor

1    Code violations alleged in this cause of action, and are therefore subject to civil penalties payable

2    to Long.

3        104.    During the Relevant Period, Defendants failed to pay Long, on regularly

4    established paydays, all earned wages to which he was entitled, respectively, under the Labor

5    Code IWC Order, as alleged in this Complaint, and as incorporated herein by reference.

6        105.    In violation of Labor Code section 204, Defendants, during the Relevant Period,

7    willfully and intentionally refused to perform their obligations to compensate Long for all wages

8    earned.

9        106.    As a direct and proximate result of Defendants' willful and intentional conduct

10   Long is entitled to recover a penalty of $100 for failure to pay him for the initial violation and

11   $200 for each subsequent violation plus 25 percent of the amount unlawfully withheld, pursuant

12   to Labor Code section 210.

13                          **SEVENTH CAUSE OF ACTION**

14            (Failure to Pay All Compensation Due and Owing at Separation of Employment)

15                              (Against all Defendants)

16       107.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

17   forth herein.

18       108.    Defendants were Long's "employer" during the Relevant Period under the

19   California Labor Code and the IWC Order.

20       109.    Labor Code section 201 requires an employer who discharges an employee to pay

21   compensation due and owing immediately upon discharge.

22       110.    Labor Code section 203 provides that an employer is liable to for waiting time

23   penalties if the employer willfully fails to pay compensation promptly upon discharge or

24   resignation as required pursuant to Labor Code sections 201 or 202.

25       111.    Long worked for Defendants until they laid him off on November 1, 2016.

26       112.    Defendants willfully failed to provide Long all wages due and owing on his last

27   day of work or at any time thereafter.

28       113.    Defendants' failure to pay wages and reimbursements timely to Long at the time of

1    his separation of employment was willful.

2         114.    As a direct and proximate result of Defendants' willful conduct, Long has suffered

3    damages. Defendants are therefore liable to Long for waiting time penalties under Labor Code

4    section 203 in an amount to be ascertained at trial.

5                              **EIGHTH  CAUSE OF ACTION**

6                                   (Age Discrimination)

7                                  (Against all Defendants)

8         115.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

9    forth herein.

10        116.    At all times material hereto, Defendants were an employer and Long an employee

11   as defined by FEHA.

12        117.    Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

13   basis of age under Government Code section 12940 in that Long was subjected to adverse

14   treatment, denied equal treatment, denied job benefits and opportunities, denied accommodation,

15   not engaged with in an interactive process, otherwise discriminated against, and ultimately

16   terminated on account of his age. Each of the Defendants was aware of and participated in this

17   discrimination. Defendants' conduct was not based upon a bona fide occupational qualification.

18        118.    As a direct, foreseeable, and legal result of the Defendants' conduct, Long has

19   suffered and continues to suffer substantial losses incurred in seeking substitute employment and

20   in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered

21   and continues to suffer substantial embarrassment, extreme and severe humiliation, mental

22   anguish, and emotional distress, all to his damage in an amount according to proof. Furthermore,

23   Long has incurred and/or will incur medical expenses for treatment by health professionals and

24   for other incidental expenses.

25        119.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

26   oppressively with the wrongful intention of injuring Long, from a willful improper motive

27   amounting to malice, and in conscious disregard of Long's rights and for the deleterious

28   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

1   the conduct described and alleged herein and, through their managing agents and/or supervisors,

2   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

3   this action. Long is thus entitled to recover punitive damages in an amount according to proof.

4        120.    As a result of Defendants' conduct as alleged herein, Long is entitled to reasonable

5   attorneys' fees and costs of suit.

6        121.    Within the time provided by law, Long filed charges with the DFEH and obtained

7   a Right to Sue notice. This action has been brought within one year from the date upon which

8   Long received his Right to Sue notice.

9   **NINTH   CAUSE OF ACTION**

10   (Disability Discrimination)

11   (Against all Defendants)

12        122.    Long realleges and incorporates by reference all prior Paragraphs as if fully set

13   forth herein.

14        123.    At all times material hereto, Defendants were an employer and Long an employee

15   as defined by FEHA.

16        124.    Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

17   basis of physical and/or mental disability and/or medical condition under Government Code

18   section 12940 in that Long was subjected to adverse treatment, denied equal treatment, denied job

19   benefits and opportunities, denied accommodation, not engaged with in an interactive process,

20   otherwise discriminated against, and ultimately terminated on account of his physical and/or

21   mental disability and/or medical condition. Each of the Defendants was aware of and participated

22   in this discrimination. Defendants' conduct was not based upon a bona fide occupational

23   qualification.

24        125.    As a direct, foreseeable, and legal result of the Defendants' conduct, Long has

25   suffered and continues to suffer substantial losses incurred in seeking substitute employment and

26   in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered

27   and continues to suffer substantial embarrassment, extreme and severe humiliation, mental

28   anguish, and emotional distress, all to his damage in an amount according to proof. Furthermore,

1   Long has incurred and/or will incur medical expenses for treatment by health professionals and

2   for other incidental expenses.

3        126.   Defendants committed the conduct alleged herein maliciously, fraudulently, and

4   oppressively with the wrongful intention of injuring Long, from a willful improper motive

5   amounting to malice, and in conscious disregard of Long's rights and for the deleterious

6   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

7   the conduct described and alleged herein and, through their managing agents and/or supervisors,

8   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

9   this action. Long is thus entitled to recover punitive damages in an amount according to proof.

10       127.   As a result of Defendants' conduct as alleged herein, Long is entitled to reasonable

11  attorneys' fees and costs of suit.

12       128.   Within the time provided by law, Long filed charges with the DFEH and obtained

13  a Right to Sue notice. This action has been brought within one year from the date upon which

14  Long received his Right to Sue notice.

15                              **TENTH  CAUSE OF ACTION**

16                                   (Failure to Accommodate)

17                                   (Against all Defendants)

18       129.   Long realleges and incorporates by reference all prior Paragraphs as if fully set

19  forth herein.

20       130.   At all times material hereto, Defendants were an employer and Long an employee

21  as defined by FEHA.

22       131.   FEHA requires an employer to make reasonable accommodations for an

23  employee's disability to enable the employee to perform a position's essential functions, unless

24  doing so would produce undue hardship to the employer's operations.

25       132.   Long notified Defendants of his physical and/or mental disability and/or medical

26  condition and of his need for a reasonable accommodation, as outlined above. However,

27  Defendants failed to provide Long a reasonable accommodation, and instead laid him off and

28  otherwise discriminated against him. Accommodating Long's physical and/or mental disability

1  and/or medical condition would not have been an undue hardship.

2      133.   As a direct, foreseeable, and legal result of the Defendants' conduct, Long has

3  suffered and continues to suffer substantial losses incurred in seeking substitute employment and

4  in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered

5  and continues to suffer substantial embarrassment, extreme and severe humiliation, mental

6  anguish, and emotional distress, all to his damage in an amount according to proof. Furthermore,

7  Long has incurred and/or will incur medical expenses for treatment by health professionals and

8  for other incidental expenses.

9      134.   Defendants committed the conduct alleged herein maliciously, fraudulently, and

10 oppressively with the wrongful intention of injuring Long, from a willful improper motive

11 amounting to malice, and in conscious disregard of Long's rights and for the deleterious

12 consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

13 the conduct described and alleged herein and, through their managing agents and/or supervisors,

14 authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

15 this action. Long is thus entitled to recover punitive damages in an amount according to proof.

16     135.   As a result of Defendants' conduct as alleged herein, Long is entitled to reasonable

17 attorneys' fees and costs of suit.

18     136.   Within the time provided by law, Long filed charges with the DFEH and obtained

19 a Right to Sue notice. This action has been brought within one year from the date upon which

20 Long received his Right to Sue notice.

21                    **ELEVENTH CAUSE OF ACTION**

22                   (Failure to Engage in Interactive Process)

23                        (Against all Defendants)

24     137.   Long realleges and incorporates by reference all prior Paragraphs as if fully set

25 forth herein.

26     138.   At all times material hereto, Defendants were an employer and Long an employee

27 as defined by FEHA.

28     139.   FEHA makes it an unlawful employment practice to fail to engage in a timely,

1   good-faith, interactive process with an employee to determine effective reasonable
2   accommodations, if any, in response to a request for reasonable accommodation by an employee
3   with a known physical and/or mental disability and/or medical condition.

4   140.   Long notified Defendants of his physical and/or mental disability and/or medical
5   condition and of his need for a reasonable accommodation, as outlined above. However,
6   Defendants failed to engage in a timely, good-faith, interactive process with Long to determine
7   effective reasonable accommodations, and instead laid him off and otherwise discriminated
8   against Long.

9   141.   As a direct, foreseeable, and legal result of the Defendants' conduct, Long has
10   suffered and continues to suffer substantial losses incurred in seeking substitute employment and
11   in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered
12   and continues to suffer substantial embarrassment, extreme and severe humiliation, mental
13   anguish, and emotional distress, all to his damage in an amount according to proof. Furthermore,
14   Long has incurred and/or will incur medical expenses for treatment by health professionals and
15   for other incidental expenses.

16   142.   Defendants committed the conduct alleged herein maliciously, fraudulently, and
17   oppressively with the wrongful intention of injuring Long, from a willful improper motive
18   amounting to malice, and in conscious disregard of Long's rights and for the deleterious
19   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of
20   the conduct described and alleged herein and, through their managing agents and/or supervisors,
21   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in
22   this action. Long is thus entitled to recover punitive damages in an amount according to proof.

23   143.   As a result of Defendants' conduct as alleged herein, Long is entitled to reasonable
24   attorneys' fees and costs of suit.

25   144.   Within the time provided by law, Long filed charges with the DFEH and obtained
26   a Right to Sue notice. This action has been brought within one year from the date upon which
27   Long received his Right to Sue notice.

28   **TWELFTH  CAUSE OF ACTION**

(Wrongful Termination in Violation of Public Policy)

(Against all Defendants)

145.   Long realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

146.   At all times material hereto, Defendants were an employer and Long an employee as defined by FEHA.

147.   Defendants discriminated against Long due to his physical and/or mental disability and/or age.

148.   Defendants terminated Long in violation of the public policies of the State of California prohibiting discrimination, as expressed in FEHA, other California statutes, and decisions of the California and federal judiciary.

149.   As a direct, foreseeable, and legal result of the Defendants' conduct, Long has suffered and continues to suffer substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Furthermore, Long has incurred and/or will incur medical expenses for treatment by health professionals and for other incidental expenses.

150.   Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Long, from a willful improper motive amounting to malice, and in conscious disregard of Long's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned and ratified the unlawful conduct of all of the other Defendants named in this action. Long is thus entitled to recover punitive damages in an amount according to proof.

151.   As a result of Defendants' conduct as alleged herein, Long is entitled to reasonable attorneys' fees and costs of suit.

**THIRTEENTH  CAUSE OF ACTION**

(Failure to Provide Employment and Personnel Files)

(Against all Defendants)

152.    Long realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

153.    Labor Code section 226(c) provides that an employer "who receives a written or oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request."

154.    Labor Code section 432 provides that an employee who "signs any instrument relating to the obtaining or holding of employment. . . shall be given a copy of the instrument upon request."

155.    Labor Code section 1198.5(b)(1) provides that an "employer shall make the contents of [an employee's] personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request."

156.     Labor Code section 1198.5 also establishes an employee's right to recover penalties for violation of the statute, together with costs of suit and attorneys' fees.

157.    On November 18, 2016, Long requested, through his counsel and pursuant to Labor Code sections 226, 432, and 1198.5, that Defendants provide copies of all his personnel and employment files, including wage statements, time records, employment contracts, employee handbooks, evaluations, disciplinary actions, and anything at all that Long had signed as part of his employment.

158.    Defendants provided Long's personnel file on December 1, 2016, but did not provide Long's payroll records until December 23, 2016.

159.    As a direct and proximate result of Defendants' conduct alleged herein, Long is entitled to statutory penalties and to his reasonable attorneys' fees and costs.

## **FOURTEENTH  CAUSE OF ACTION**

(Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200,

1    *et seq.*, and Code of Civil Procedure § 526)

2                            (Against all Defendants)

3        160.   Long realleges and incorporates by reference all prior Paragraphs as if fully set

4    forth herein.

5        161.   California Business & Professions Code sections 17200 *et seq.* prohibit acts of

6    unfair competition, which includes any "unlawful and unfair business practices."

7        162.   Defendants' conduct, as alleged herein, have been and continue to be unfair,

8    unlawful, and deleterious to Long. Long hereby seeks to enforce important rights within the

9    meaning of Code of Civil Procedure section 1021.5. Long is a "person" within the meaning of the

10   Business & Professions Code section 17204, and therefore possesses standing to bring this suit

11   for injunctive relief and restitution.

12       163.   It is the policy of California to enforce minimum labor standards, to ensure that

13   employees are not required or permitted to work under substandard and unlawful conditions, and

14   to protect those employers who comply with the law from losing competitive advantage to other

15   employers who fail to comply with labor standards and requirements.

16       164.   Through the conduct alleged herein, Defendants acted contrary to these public

17   policies and have engaged in unlawful and/or unfair business practices in violation of Business &

18   Professions Code sections 17200 *et. seq.*, depriving Long of the rights, benefits, and privileges

19   guaranteed to employees under California law.

20       165.   Defendants regularly and routinely violated the California Labor Codes and/or

21   IWC Order with respect to the allegations in this Complaint, incorporated herein by reference.

22       166.   Defendants regularly and routinely failed to provide Long overtime pay, adequate

23   meal period, or adequate rest breaks as required by the IWC Order and California Labor Code.

24       167.   By engaging in theses unfair business practices, Defendants harmed Long, and

25   thus by that design and plan gained an unfair competitive edge in the marketplace.

26       168.   Under Business & Professions Code section 17203, Long is entitled to obtain

27   restitution of these funds from Defendants on behalf of himself and others affected by

28   Defendants' unfair business practices.

169.   Pursuant to Business & Professions Code section 17203, injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair business practices alleged herein. Long is informed and believes, and based thereon alleges, that Defendants and persons acting in concert with them have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Long has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above described acts will cause great and irreparable damage to Long unless Defendants are restrained from committing further illegal acts.

170.   Long's success in this action will result in the enforcement of important rights.

171.   Private enforcement of the rights enumerated in this complaint is necessary, as public agencies have only sought limited enforcement of those rights, if any. Long, individually and by and through counsel, has incurred and continues to incur a financial burden in pursuing this action. Long further seeks to enjoin the above-referenced unlawful actions under the Labor Code. Therefore, Long seeks an award of attorneys' fees and costs of suit on this cause of action pursuant to Code of Civil Procedure § 1021.5 and other applicable Labor Code sections.

## PRAYER FOR RELIEF

WHEREFORE, Long prays for judgment against all Defendants, and each of them, as follows:

1. Compensatory damages, including but not limited to for losses resulting from humiliation, mental anguish, and emotional distress, in amounts to be proven at trial;

2. General and special damages, in amounts to be proven at trial;

3. Statutory penalties;

4. Interest according to law;

5. Exemplary and punitive damages, in amounts to be proven at trial;

6. Costs of suit;

7. Reasonable attorneys' fees; and

1    8.    For such other and further relief as this Court may deem just and proper.

2                      **REQUEST FOR TRIAL BY JURY**

3    Long hereby requests a trial by jury.

4

5                                    Respectfully submitted,

6    Date:   June 13, 2017           SHEIK LAW, INC.

7

8                                    By:   _____

     Mani Sheik
9                                    Attorneys for Plaintiff William Charles Long

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28